# Walker *versus* Dehaven.

*Money charged on land during life of widow is personalty, and payable to administrator of deceased heir.*

Where, on partition, the interest in the valuation money of the real estate of a decedent, payable at the death of the widow, was secured to a married daughter by recognisance, and after the death of her husband, and subsequently, of the widow, the daughter died also, leaving an only daughter, who afterwards died intestate and without issue, but leaving a husband, who also died shortly after; *Held*, that the interest in the dower fund passed, as personalty, to his personal representatives: and that the heirs or next of kin of the original cognisee had no interest therein.

ERROR to the Common Pleas of *Montgomery county*.

This was an action on the case by Ivins Walker against Hugh Dehaven and Mary J. his wife, to recover the share of the plaintiff in the sum of $303.87, with interest from the death of Rebecca, the widow of Jonathan Cleaver, deceased, who died November 21st 1841.

The case was this:—

Jonathan Cleaver died in February 1833, intestate and seised of, besides other real estate, a tract of one hundred and fifty-four acres and nineteen perches of land, situated in Montgomery county, which descended to his heirs. He left a widow and the following children and grandchildren, to wit: William; Mary,

[Walker *v.* Dehaven.]

intermarried with Peter Rambo; Keziah, intermarried with Samuel Henderson; Theodosia, intermarried with Samuel Phillips; Lydia, intermarried with John Bartholomew; Charlotte, intermarried with Adam Siter; and Emily, since intermarried with Edward Bartholomew; William Brown, a grandson, and son of Rebecca, who died before her father; and Jonathan Walker and Ivins Walker (the plaintiff here), sons of Sarah, a daughter of the intestate, who died before him.

On the 9th of April 1833, on the petition of William Cleaver, an inquest was awarded, whose report was confirmed August 20th 1833, and on the same day William Cleaver elected to take the said tract, designated as lot No.. 2, and it was adjudged to him at the appraised value, to wit, $8214.53. He entered into recognisance to secure the payment thereof, and also executed a bond for the payment of $607.74 in twelve months, to Samuel Henderson and Keziah his wife, and the further sum of $303.87, to be paid immediately after the death of the widow of Jonathan Cleaver. It was contended that this sum was never paid to Keziah Henderson, nor to any one since her death. She died on the 14th of August 1844, and her husband died in November 1841, the first since the death of the widow and the latter shortly before. Keziah left issue a daughter, by a former husband, to wit, Mrs. Tyson, who married Samuel H. Traquair, and died about two years after her mother. She left no children. Her husband, Samuel Traquair, died about the year 1850, leaving no issue.

William Cleaver, to whom lot No. 2 was adjudged, by his last will and testament devised the same to his widow for life, and after her death to Jonathan Cleaver, the younger, in fee simple. Jonathan Cleaver, his mother, and Rebecca J. Cleaver, an unmarried sister, by their deed dated the 26th of June 1858, conveyed the said tract to Mary J. Dehaven, wife of Hugh Dehaven, defendant here, who, when the suit was instituted, were in possession.

To a declaration in the usual form the defendant pleaded *non assumpsit*, and *actio non accrevit infra sex annos*.

Terms of compromise had been proposed and accepted in part, but as they were said to have been entered into in consequence of erroneous representations, the agreement to compromise was rescinded, and the case proceeded in by all the parties as if no such arrangement had been made.

The court below (CHAPMAN, P. J.), after stating the main facts, of the case, instructed the jury as follows:—

" It will be seen by the foregoing statement, that Ivins Walker, the plaintiff, is the nephew of Keziah Henderson, and that his claim to a share of the $303.87, payable to Keziah on the death of her mother, is devised through her, or through his cousin Mrs. Tyson, since Mrs. Traquair. Keziah having died without leaving

[Walker *v.* Dehaven.]

any other child than Mrs. Tyson, who left no issue, and her husband, since deceased, not having reduced the claim into possession, there would seem to be no one standing in the way of the plaintiff to a share of the $303.87, as heirs or next of kin, if it has not been paid. But it is contended by the defendants, that, even supposing this money never has been paid, the plaintiff has mistaken his remedy. That the sum of $303.87 constituted a part of the personal estate of Keziah Henderson, and passed on her death to her daughter Mrs. Tyson as such. That it vested in Mrs. Tyson, and consequently the plaintiff must claim through her ; but being personal estate it could only be recovered by her administrator, even if an administration on the estate of Keziah could be dispensed with. It does not appear that Mrs. Tyson, afterwards Traquair, left no debts. How her cousin can maintain an action to recover the assets of her estate, consistently with the policy of the law and without infringing upon the rights of creditors, is not perceived, unless a recovery in this case by him could be successfully pleaded by the defendants in an action brought by her administrator, which, it is believed, could not be done. He has given no security, and if he were permitted to recover he would incur no responsibility to any one. [To sustain this action at the suit of the plaintiff would sanction an improper interference with the administration of an intestate's estate.] And with a view to sustain it the court cannot go into an inquiry as to the indebtedness of the decedent, which must, in many instances, be attended by unsatisfactory results.

" Mr. Siter says, he does not know that Keziah Henderson left any debts. This is merely negative testimony. But then there is no evidence whether Mrs. Tyson, afterwards Traquair, did or not.

" It is contended by the plaintiff, that the interest of Keziah Henderson was real estate. The interest of the widow has been so considered. It has been held to be in the nature of a rent-charge, and liable to be taken in execution and sold as real estate. But so far as the heirs are concerned, any interest they had in the land was converted into personalty by the decree of adjudication. They had a lien it is true, but it could not be enforced by distress, a right conferred on the widow by the Act of Assembly. But no matter in what character it may have been received by Keziah, it would be treated as personalty in the hands of her daughter.

" It is further contended by the plaintiff, that the defendants' defence should have been taken advantage of by plea in abatement, and cannot be entertained under the plea of *non assumpsit*. The general rule is, that the omission of proper parties, as plaintiffs in cases of contract, may be taken advantage of at the trial, under the general issue ; [any defence is available under it which goes to show that, *ex equo et bono*, the plaintiffs ought not to recover.] This

[*Walker v. Dehaven.*]

is an action of *assumpsit* brought against a married woman and her husband. She was the purchaser of the land charged with the encumbrance. If there was any implied promise, even supposing under such circumstances her promise would be binding, it is not perceived how it could enure directly to the benefit of the plaintiff. [Under the plea of *non assumpsit*, the defence is deemed to be available. It appears terms of compromise were entered into at one time. But defendant contends they were based on a mistake. There is evidence of notice of refusal to comply. If, after this, the case was proceeded in by the counsel of the plaintiff before arbitrators as if the arrangement had never been entered into, it must be treated as a nullity.] The plaintiff took his chance of gaining more by a trial. It is unnecessary to say anything in relation to the defendant's other plea, as we instruct you, [if you believe the evidence, your verdict must be for the defendant]."

There was a verdict and judgment accordingly ; whereupon the plaintiff sued out this writ, averring that the court erred in charging as printed above in brackets, and in not charging that the want of proper parties should have been taken advantage of by a plea in abatement, and that such a defence could not be entertained under the plea of *non assumpsit*.

*George N. Corson* and *James Boyd*, for plaintiff in error.— The equity of the case is with the plaintiff, because, 1st. When the defendants bought the property they had record notice that Keziah's share of the dower fund was unpaid.

2d. They, through their counsel, agreed to pay this very money ; and

3d. They did not on the trial offer to prove or even allege payment of this claim.

In the face of these facts, they managed to turn us out of court because an administrator ought to have sued for this money. But why not say so on the 4th of January 1862, when defendant pleaded : 1st, " *Non assumpsit ;*" 2d, " *Actio non accrevit infra sex annos ;*" and plaintiff replied : " *Replication and issue.*" In Rangler *v.* Hummel, 1 Wright 133, this court says : " The only plea in this case was ' Not guilty.' The evidence was not competent under it. There should have been a plea to the wife's capacity to sue, or it would stand confessed, and evidence on either side would then be irrelevant. The plainest ·principles of justice required that that which might abate the action should have been pleaded in a proper manner."

Again, in Horan *v.* Weiler & Ellis, 5 Wright 472 : " The defendant's plea of *non assumpsit* raised no question of authority in the plaintiff to maintain their action." And so in McMurray's Adm's. *v.* Hopper, 7 Wright 469 : " After the defendant has pleaded the

[Walker v. Dehaven.]

general issue three times to successive *scire faciases* on the same judgment, it is too late for him to take advantage of a defect of jurisdiction, even if a defect existed on a bill of exceptions to evidence.

In Commonwealth v. Cope, 9 Wright 164: "This is a privilege he may waive, and he does waive it when he pleads to the action, for he thereby admits the mode by which the remedy is pursued to be correct."

In Lycoming Insurance Co. v.. Schreffler, 8 Wright 272: "I think a fair and just answer to the objection urged is, that if successful, it would only abate the action at most, and as this case was here before the parties standing on the record, just as they do now, the objection should have then been made; treating it, therefore, somewhat in the nature of a plea in abatement, it comes too late now. The objection should be treated as waived."

Under these decisions the defendants waived any objection that there might have been to our being the proper and rightful plaintiff, and no question arose under their plea of *non assumpsit*, as to whether we were proper plaintiff or not. They admit we are by their plea, and all they could do under it was to show that the claim set forth in the *narr.* had no existence, or that it had been paid, released, or something else, to show they ought not to pay this money. Especially should they be held to the strict rules of pleading when they seek to escape, not upon the merits but upon a technical ground.

If this question rested solely on their written agreement to pay this money, an agreement made in the suit, why should they not be held to it? And if they are to be released from it, it should be on terms, to wit, to try the case on the merits.

But administration was not necessary in such a case as this. Keziah died years ago, without any debts to pay, so that the plaintiff is entitled to this money; and his satisfaction of record for it would release the defendants, because nobody else could come and claim it of them.

Then in the language of Duncan, J., in Lee v. Gibbons, 14 S. & R. 111: "It disturbs not the order of paying debts, for all subsisting debts have been paid, *cui bono* take out letters of administration."

*G. R. Fox*, for defendant in error.—1. This agreement, without which the plaintiff had not the shadow of a case, was entered into in consequence of the representations, utterly erroneous, but not designedly so, of the then counsel for the plaintiff; and upon discovery of the true state of the facts by the then counsel for the defendants, notice was promptly given that it had been signed under a mistake as to the facts, and that the defendants would not be bound by it. It was at best the compromise of a claim which

[Walker *v.* Dehaven.]

it now appears was not in the least doubtful, but was not sustainable in fact or in law.

In consequence of the notice the plaintiff did not tender the refunding and indemnifying receipts stipulated for in the agreement, and the defendants did not pay the money at or before the time fixed for the arbitration, and the parties proceeded with the arbitration as if there had been no agreement.

The question of the mutual abandonment of the agreement was one of fact; it was left to the jury, upon their belief of the testimony, and their verdict is conclusive of it. If the money had been paid by the defendants under the agreement, they could have recovered it back on discovering and showing that the plaintiff had no title to it.

2. Defendants never owed, nor do they now owe the plaintiff anything. At the death of his wife in 1846, Mr. Traquair became the owner of any moneys due her from her mother's estate; and if the moneys due upon William Cleaver's bond and recognisance are still unpaid, they must be collected by Keziah's administrator, and paid over to Mr. Traquair's administrator. Under no possible circumstances could this plaintiff be entitled to anything. See Pauley *v.* Pauley, 7 Watts 159.

The opinion of the court was delivered, February 2d 1865, by

READ, J.—The plaintiffs below had no interest whatever in the valuation-money of Keziah Cleaver or Henderson in her father's lands, taken by her brother William, and secured by his bond and recognisance, one third of it representing the widow's share, not being payable until her death. Samuel Henderson died before the widow, and Keziah died after her mother, leaving surviving her an only child, Rebecca C. Tyson, who died in 1849, intestate and without issue, but leaving her husband, Samuel H. Traquair, who died shortly after, having taken the whole personal estate of his wife, including, of course, this money, which therefore really belongs to his representatives, whether they are to receive it when administering on the estate of his wife or of her mother is immaterial in the present case. The alleged agreement in this case is disposed of by the observations of the learned judge in the court below.

Judgment affirmed.